Hillsborough-northern judicial district
No. 2006-199

THE STATE OF NEW HAMPSHIRE

v.

DELVIN WHITE

Argued: February 22, 2007
Opinion Issued: March 30, 2007

120

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Delvin White, appeals his convictions following a jury trial of one count of aggravated felonious sexual assault, *see* RSA 632-A:2, II (Supp. 2006), and one count of felonious sexual assault, *see* RSA 632-A:3 (Supp. 2006). He contends that the Trial Court (*Barry*, J.) erred by permitting the State to introduce: (1) a statement allegedly made by the defendant to the victim's sister; and (2) the confession of a man who had been previously accused, but acquitted, of assaulting the victim and her sister. We reverse and remand.

The following facts were either adduced at trial, or are not disputed on appeal. On March 2, 1996, the defendant spent the afternoon with his friend Wayne, Wayne's girlfriend Marguerite, and their children. Wayne

had two daughters, M.E. and M.G., aged twelve and eight respectively, and Marguerite had two sons, one about fifteen, D.G., and the other only an infant.

After spending the afternoon with Wayne, the defendant was invited to return for dinner. By the time dinner was over, he had consumed at least five beers and it was agreed that he should spend the night rather than drive home. Later in the evening, after M.E. had gone to bed, the defendant was seated on a couch in the playroom with M.G. and D.G. At that time, the defendant allegedly said to M.G., "I lived to kill and molest little kids." D.G. testified that he did not remember the defendant saying anything.

A short time later, M.G. went to Wayne and Marguerite in another room and told them that the defendant had sexually assaulted her. Marguerite took the children to a neighbor and contacted the police. When the police arrived, they spoke with M.G. about the assault and suggested that both girls be taken to a hospital for a physical examination. The examinations did not confirm or disprove the sexual assault claims. M.E. later accused the defendant of sexually assaulting her earlier in the day.

In 1997, the defendant was convicted of sexually assaulting both girls. We affirmed that conviction on appeal. *See State v. White*, 145 N.H. 544 (2000), *cert. denied*, 533 U.S. 932 (2001). The defendant subsequently sought a writ of habeas corpus from the United States District Court for the District of New Hampshire, which was denied. *White v. Coplan*, 296 F. Supp. 2d 46 (D.N.H. 2003). The defendant appealed and the Court of Appeals for the First Circuit reversed and ordered a new trial. *White v. Coplan*, 399 F. 3d 18 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 478 (2005).

Upon retrial, the defendant was convicted of two counts involving M.E. On appeal, the defendant argues that the trial court erred in admitting the defendant's statement to M.G. and in permitting the State to introduce the confession of another man accused, but acquitted, of assaulting both girls.

As to the defendant's second argument, during his first trial the trial court prevented him from cross-examining the girls about prior accusations they had made against other individuals, including a man named Roger Houston, because the defendant had not shown the prior accusations to be "demonstrably false." *White*, 145 N.H. at 547. On appeal, the defendant contended that in order to cross-examine the girls about the prior allegations, he need only have demonstrated to the trial court that there was a "reasonable probability" that the allegations were false. *Id.* While we agreed with the defendant that he had met the "reasonable probability" standard, we held that the "demonstrably false" standard applied, and that the defendant had not shown the allegations to be "demonstrably false." *Id.* at 547-48.

The defendant then sought a writ of habeas corpus arguing that the conduct of his trial violated his Sixth Amendment right to confrontation because he was prevented from cross-examining the girls regarding their prior accusations. Eventually, the First Circuit granted the defendant's writ, ruling that he was entitled to cross-examine the girls with regard to their prior accusations. *Coplan*, 399 F. 3d at 26-27.

The First Circuit ruled that, while the requirement that the defendant meet the "demonstrably false" standard was not "always and everywhere infirm," in this case it was improperly applied. *Id.* at 26. According to that court:

> We are concerned here with an attempt to pursue by cross-examination prior past accusations of a quite similar character to the present one; with a ruling . . . that the prior accusations (or at least two of them) were false to a reasonable probability; with a resulting plausible inference of a motive to deceive that could infect the present testimony of the two vital prosecution witnesses; and with a defendant who had virtually no other way to defend himself. This is the unusual situation and, to us, an extreme case.

*Id.* at 27 (quotation and brackets omitted). According to the First Circuit, the defendant was entitled to cross-examine the girls because "[w]e are dealing here with something far more potent than 'general credibility' evidence which, under confrontation clause standards, may have a lower status." *Id.* at 26. The First Circuit, therefore, vacated the defendant's conviction. *Id.* at 27.

In ruling that the defendant was entitled to cross-examine the girls on their prior accusations, the First Circuit stated that it was not endorsing an open-ended constitutional right to offer extrinsic evidence. *Id.* at 26. "Such an excursion requires more witnesses and documents, and so greater risks of confusion and delay; to say that impeachment here would cast light on a motive to lie is not to suggest that prior false accusations are the kind of evidence for which extrinsic evidence has traditionally been admitted." *Id.*

Prior to the defendant's retrial, he moved *in limine* to be permitted to introduce extrinsic evidence to the extent that either of the girls, during cross-examination, alleged to have no memory of the prior accusations. Following a hearing, the trial court permitted the defendant to introduce extrinsic evidence but specifically stated that, to the extent such evidence created a misleading advantage, the State would be permitted to introduce rebuttal evidence.

During trial, the State elicited, on direct examination of M.E., that she had previously accused Houston of sexually assaulting her. On cross-examination, the defendant elicited testimony from M.E. that she had accused Houston and testified against him, but that he was found not guilty. The defendant then asked M.E. if she had, in her deposition, stated that the jury in Houston's trial decided that her accusation was false. M.E. stated that she had so described the jury's verdict during her deposition. Upon redirect examination, M.E. testified that although she had, during her deposition, believed that a not guilty verdict meant that the jury believed her accusations were false, she now understood a not guilty verdict to mean that there was not enough evidence to prove that Houston was either innocent or guilty. M.G. also testified on direct examination that Houston had sexually assaulted her, but the defendant did not cross-examine M.G. regarding that accusation.

Following the testimony of M.E. and M.G., the State sought to introduce the testimony of Officer James Winn of the Manchester Police Department. The State represented that Winn would testify that Houston had confessed to him that he had assaulted the two girls, but that he later recanted his confession. The State contended that Winn's testimony was appropriate because the defendant, by eliciting testimony from M.E. that she thought the jury in Houston's case believed her allegations to be false, had created a misleading impression which opened the door to this rebuttal testimony. Therefore, Winn's testimony that Houston confessed would, the State contended, counter M.E.'s misleading testimony. Over the defendant's objections, the trial court permitted the State to introduce Winn's testimony, which was consistent with the State's representations.

On appeal, the defendant contends that the testimony he elicited from M.E. did not create a misleading impression and thus did not open the door to Winn's testimony. Additionally, the defendant contends that even if the door was opened, Winn's testimony was inadmissible under *Crawford v. Washington* 541 U.S. 36 (2004). The State counters that the defendant opened the door to Winn's testimony, and that because the door was opened, the defendant waived his Sixth Amendment right to confrontation as explained in *Crawford*. Finally, the State contends that if there was any error in admitting this testimony, it was harmless.

The admissibility of evidence is a matter left to the sound discretion of the trial court. *State v. Gibson*, 153 N.H. 454, 457 (2006). Because the trial court is in the best position to gauge the prejudicial impact of particular testimony, we will not upset its ruling absent an unsustainable exercise of discretion. *Id.* To sustain his burden, the defendant must show that the trial court's decision was unreasonable to the prejudice of his case. *Id.*

■ We have recently clarified that the "opening the door" doctrine subsumes within it two doctrines governing the admissibility of evidence. *State v. Morrill*, 154 N.H. 547, 549-50 (2006). The first doctrine, "curative admissibility," applies when inadmissible prejudicial evidence has been erroneously admitted, and the opponent seeks to introduce testimony to counter the prejudice. *Id.* at 549. The second doctrine, "specific contradiction," is more broadly applied to situations in which one party has introduced admissible evidence that creates a misleading advantage and the opponent is then permitted to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. *Id.* at 549-50. Here, the State contends that the defendant introduced admissible evidence that created a misleading impression. We are therefore concerned with the application of the specific contradiction doctrine.

■ In order for this doctrine to apply, a party must introduce evidence that provides a justification, beyond mere relevance, for the opponent's introduction of evidence that may not otherwise be admissible. *Id.* at 550. The initial evidence must, however, have reasonably misled the fact finder in some way. *Id.* The rule thus prevents a party from successfully excluding evidence favorable to his opponent, and then selectively introducing this evidence for his own advantage, without allowing the opponent to place the evidence in proper context. *Id.* The fact that the "door has been opened," however, does not permit all evidence to pass through because the doctrine is intended to prevent prejudice, and is not to be subverted into a rule for the injection of prejudice. *Id.*

■ Based upon our review of the record, we conclude that the doctrine of specific contradiction does not apply because the defendant did not create a misleading impression. The trial court, when ruling on the admissibility of Winn's testimony, found that the defendant had opened the door "by [his] opening statement indicating that [he was] going to cross-examine these young people with regard to the false allegations, and [he] used false allegations in [his] opening statement." The trial court further stated to the defendant:

> You have brought in the fact that these allegations in your mind are false. The witnesses said they weren't. They said he was found not guilty because the State didn't prove its case. I think that you have created a misleading situation with regard to what happened. I think the State is entitled to counter by presenting the fact that Houston confessed.

Thus, the trial court specifically noted that the defendant elicited testimony that the jury in Houston's case might have found him not guilty because it believed the allegations were false, and the State elicited testimony that the jury might have found him not guilty because the State had not proven its case. Therefore, each side elicited beneficial admissible evidence about M.E.'s understanding of Houston's acquittal. In light of the fact that each side elicited admissible testimony favorable to its theory of the case, we can not agree with the trial court that the defendant's examination of M.E. created a misleading impression.

During oral argument before this court, the State contended that merely introducing the fact that Houston was acquitted misled the jury. According to the State, the jury was misled because, after the initial direct and cross-examination, all the jury knew was that M.E. had accused Houston, but that he was acquitted. The State's argument, however, like the argument in its brief, overlooks that on redirect examination M.E. stated that she understood that Houston was acquitted, not necessarily because the jury did not believe her, but because the State had not met its burden in some way. Thus, as noted above, the State introduced admissible evidence countering any potential misunderstanding by the jury in the defendant's case about the accusations against Houston and his subsequent acquittal and had placed M.E.'s testimony in a proper context. For the above reasons, we hold that the defendant did not create a misleading impression and thus did not open the door.

Because we hold that the defendant did not open the door, we must determine whether the testimony the State sought to introduce was inadmissible. The defendant contends that Winn's testimony is barred by his Sixth Amendment right to confrontation as explained in *Crawford*. Because the defendant raises no claim under the State Constitution, we confine our analysis to the defendant's federal constitutional claim. *See State v. Panzera*, 139 N.H. 235, 239 (1994).

■ In *Crawford*, the Supreme Court ruled that the testimonial statements of declarants absent from trial are admissible only when the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 59. After *Crawford*, "a declarant's 'testimonial' out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, or (2) the defendant had a prior opportunity for cross-examination and the declarant is unavailable, or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted." *United States v. Maher*, 454 F. 3d 13, 19-20 (1st Cir. 2006) (citations omitted).

■ Under the *Crawford* analysis as outlined in *Maher*, we must first determine whether Houston's confession is a "testimonial" statement. While it refrained from providing a comprehensive definition of testimonial statements in *Crawford*, the Supreme Court recently clarified its definition in *Davis v. Washington*, 126 S. Ct. 2266 (2006). In *Davis*, the Court stated:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273-74. Here, the statement at issue is a confession given to police during an interview sometime after the events described. There is no allegation that at the time of Houston's interview there was any ongoing emergency or other similar circumstances. We hold that the statements here are testimonial because they were given under circumstances objectively indicating that the primary purpose of the interrogation was to establish past events potentially relevant to later criminal prosecution.

■ Because Houston's confession is testimonial, it is only admissible if he testified, or if he was unavailable and had been subject to prior cross-examination by the defendant, or if it is offered for some reason other than its truth. *See Maher*, 454 F. 3d at 19-20. It is undisputed that Houston did not testify. Additionally, the record does not indicate that the defendant had any prior opportunity to cross-examine Houston. Moreover, as pointed out by the defendant during trial, there was no indication that Houston was unavailable as a witness. The State did not present any evidence or argument that it had ever attempted to contact him or that it had taken any steps aimed at securing his presence. *See Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 777 (2005) (witness is "unavailable" when absent from the hearing and the proponent of the witness has been unable to procure attendance by process or other reasonable means). Finally, Houston's confession was offered for its truth. The State's intention in admitting the confession was to demonstrate that Houston had, in fact, assaulted the two girls, but that he was nonetheless acquitted. If the statement was not offered for its truth, it would have had no value to the State. Accordingly, for the above reasons we conclude that Winn's testimony about Houston's confession was inadmissible. Because the defendant did not open the door,

the State was not permitted to introduce Winn's inadmissible statements about Houston.

As noted above, in order for the defendant to meet his burden to show error by the trial court, he must show not only that the evidence was improperly admitted, but also that the decision to admit it was unreasonable to the prejudice of his case. *See Gibson*, 153 N.H. at 457. The State's theory of the case relied upon M.E. and M.G. having told the truth, and the defendant's theory relied upon them having falsified their accusations. Thus, the credibility of the girls was central to the case. In fact, the State explicitly recognized this when it argued to the trial court that "[t]he crux of this case is the credibility of [M.E.]." Because the issue of Houston's confession bore directly upon the credibility of the State's key witnesses, in that it demonstrated the strength of prior accusations against another individual on facts substantially similar to those here, we conclude that introducing Houston's inadmissible confession was unreasonable to the prejudice of the defendant's case. Because the defendant has shown that the evidence was improperly admitted and that it was prejudicial to his case, he has met his burden to show an unsustainable exercise of discretion by the trial court.

Finally, the State contends that any error in admitting Houston's confession does not require reversal because such error was harmless. According to the State, Winn's testimony had no direct bearing upon the defendant's guilt or innocence and was only used to rehabilitate M.E.'s credibility after it had been impeached. Also, the State argues that there was other evidence bearing upon the defendant's guilt and that therefore, this evidence was inconsequential. We disagree.

"It is well settled that the erroneous admission of evidence is harmless only if the State proves, beyond a reasonable doubt, that the verdict was not affected by the admission." *State v. Thompson*, 149 N.H. 565, 567 (2003). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *Id.* (quotation omitted). Here, there was no physical evidence that the defendant committed the assaults. Moreover, there were no eyewitnesses to the alleged events. Therefore, the entire case rested upon the credibility of M.E. and M.G. As noted by the First Circuit, at issue here is a prior past accusation that has been shown to be false to a reasonable probability, with a resulting plausible inference of a motive to deceive on the part of the two vital prosecution witnesses, and with a defendant who had virtually no other way to defend himself. *Coplan*, 399

F.3d at 27. In such circumstances, we cannot say that any error in admitting Houston's confession was harmless beyond a reasonable doubt. Additionally, we are not persuaded that the other evidence identified by the State is of such an overwhelming nature, quantity or weight that it rendered the evidence of Houston's confession to Winn merely cumulative or inconsequential. Accordingly, we reverse the defendant's conviction and remand for further proceedings.

Given the disposition of this appeal, we need not address the defendant's other argument. Because the issue may arise on remand, however, we briefly discuss it. One of the defendant's primary concerns regarding the admission of the statement he allegedly made to M.G. is that the limiting instruction given by the trial court was insufficient to ensure that the statement was not used for an improper purpose.

The trial court need not use the specific language requested by the defendant and has discretion to decide whether a particular limiting instruction will assist the jury in reaching a verdict. *State v. Dixon*, 144 N.H. 273, 282 (1999). Here, however, the trial court's instruction was ambiguous. Because of this ambiguity, the jury's use of the limiting instruction is in doubt, and the trial court should make certain that any future limiting instruction is clear and unambiguous.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.